We'll have our argument next in Case 12-52, Dan's City Used Cars v. Pelkey. Mr. Bouffard. Mr. Chief Justice, and may it please the Court, the issue in this case is whether Section 14501 of the United States Transportation Code expressly preempts the Respondent's State Law Consumer Protection and Tort Claims for damages against a tow trucker who towed his vehicle lawfully and then several months later disposed of the vehicle after the fees for towing and storage had not been paid. Both of these claims are preempted because they are directed at the conduct, the type of conduct that tow truck companies all over this country every day engage in, in dealing with a particular type of tow that's referred to in the business as nonconsensual tows. Ginsburg. Mr. Bouffard, this law, this New Hampshire law, it regulates storage. Is this a law that applies only to the towing companies who tow the automobile and then store it? Or does the law apply, say, to a garage? Say someone brings a car to a garage for repairs, and does this storage law regulate garage operations as well as towing operations? Justice Ginsburg, this law regulates abandoned motor vehicles. It's an abandoned motor vehicle law. So it would apply to a garage operator? Well, if a garage operator came into possession of an abandoned motor vehicle, then I suppose it would. If you look at the title to this subchapter of this New Hampshire statute, the title is abandoned vehicles. Now, but what made it abandoned was that they tried to locate the owner, couldn't, and so the same thing could happen with a garage owner as happened to the towing truck. So there's nothing peculiar about being in the towing business that makes this storage application, this storage statute apply. Well, let me be clear about this statute, Your Honor. It's an abandoned vehicle statute. And what's really important to understand with this case is that none of the plaintiff's claims rely on this abandoned vehicle statute. The plaintiff has pled in his complaint a couple of allegations of violations of this abandoned vehicle law, but the substantive rights that were sued upon by the plaintiff in this case do not live in the abandoned motor vehicle law. The substantive rights that were sued upon by the plaintiff live in the State's abandoned vehicle law. And secondly, the claim that the common law negligence claim in this case arises out of the common law of New Hampshire. It doesn't arise out of the abandoned motor vehicle law. One of the sources of confusion I would submit in the New Hampshire Supreme Court's decision is that it did not adequately deal with the role of the abandoned vehicle law in this case. The abandoned vehicle law actually plays a relatively minor role as it relates to the causes of action that were pled in this case and the causes of action that the preemption defense is directed to in this case. But what's your point? If it's not part of the towing law, then it's further removed. The reason why these claims are preempted, Your Honor, is because they all stem from the towing of the vehicle, which was followed by the storage of the vehicle. Breyer, I mean, I guess you could have thousands of claims across the country, millions of claims where there are all kinds of towing laws. And, you know, it says in Cambridge, Massachusetts, park your car here during a snow emergency, it will be towed. Probably every northeastern country has laws like that. I guess there could be millions of negligence claims when the thing is towed, the guy broke the headlight. Well, I think that's a difference. Are all those things preempted? I would be amazed. I don't think so, Your Honor. And what's the difference between this and what could arise any day of the week? I mean, as I read your brief, are you saying that all the northeast statutes that say your car will be towed if you park here during a snow emergency, what happens? I mean, do they have to go to the Department of Transportation? Boston couldn't function. I know that they do tow cars. I don't know that firsthand, but I've seen it. So how is it supposed to work? There's no claim in this case, Your Honor, that the abandoned motor vehicle law is preempted, that New Hampshire's abandoned motor vehicle law is preempted. Well, there isn't in this case, but I'm curious to know how it works, because it seemed to me from what you're arguing, all the abandoned motor vehicle laws and all the snow emergency towing and everything else that I see every day would be preempted a fortiori. So you tell me how it all works. We are arguing that the causes of action that were pled in this case, which are a Consumer Protection Act claim for damages and attorney's fees, treble damages, actually, in the Consumer Protection Act claim, that claim is predicated on the Consumer Protection Law, it's predicated on the State of New Hampshire's policy protecting consumers. Now, there's an allegation in the complaint that there was also, there happened to be a violation of this abandoned vehicle law. But that is a completely meaningless allegation as it relates to the Consumer Protection Act, because even if it were a violation of the abandoned vehicle law, that would not make it a violation of the Consumer Protection Law. Consumer Protection Laws are intended to regulate fairness in business practices. That's what that statute is. Scalia. My question is the same as Justice Breyer's. It seems to me you're running in the wrong direction. To the extent you say the case doesn't involve New Hampshire's towing law, but involves just its general Consumer Protection Law, it's even further distant from being a violation of the Consumer Protection Law. It's not being preempted. Well, I — there's a difference, Your Honor, Justice Scalia, between whether the case is predicated on the New Hampshire towing law and whether or not these causes of action are related to the towing of the vehicle. Our point and our primary argument is that all of these claims are related to, within the meaning of the statute, the towing of the vehicle. I understand. My goodness. Suppose a vehicle — I pay for somebody to tow. I agree that somebody will tow my vehicle and I'll pay him $100. And he tows the vehicle, puts it in my garage and says, give me the $100, and I say, how am I going to give you the $100? Now, is — you think that that general obligation under State law to pay a debt that you've contracted to pay is eliminated? That's a very different set of circumstances, Justice Scalia. Why is that different from normal Consumer Protection Law? I don't see that it's so much different. Well, this — this case involves a nonconsensual tow. This case involves a situation where there was an opportunity, a fair opportunity, to pay for the towing and the storage charges that had been incurred. And the difference does that make? Suppose there was a towing company that lawfully towed cars, but its practice was to hold the car for 24 hours, and if it wasn't picked up, they would immediately sell it for parts. Your argument would be that's preempted by the Federal statute. No, we wouldn't. The State can't regulate that? I think the State could regulate that, Your Honor. What the State — what a private plaintiff can't do in a case like this is assert claims like common law negligence claims. All right. A private plaintiff could not assert a common law negligence claim if that were done? Lawfully towed, sold for parts within 24 hours because it wasn't picked up. I think a private plaintiff could probably assert that negligence claim. Well, if that's really — if that is not related to payment for services, then why is this — why is there such a relationship here? Well, that situation doesn't involve a payment dispute, Your Honor. This case, the case we have before us today, involves a payment dispute. This is really a payment dispute. A person — It would involve a payment dispute to the same extent as this, towed, notice sent out, you know, immediately, wasn't picked up within 24 hours, sell it for parts. Well, that's not a payment dispute. The parties haven't disputed whether or not there is a payment obligation. This case is about a disputable whether there is even an obligation to pay for the towing and the storage services. That's what this case is about. This plaintiff had an opportunity to pay for and to discharge his obligation under State law. I feel the need to be clear. Wait. When did that opportunity come up? Because I thought that the notice didn't get to the plaintiff. And then when the lawyer said, I have a client, it's his car, then the towing company went ahead and put it up for auction, and then no bidders, so they sold it, pocketed the money, gave nothing to the car owner. So I don't understand how it's a dispute about payment. This is not a case where the car owner said, I won't pay for the towing. Well, Justice Ginsburg, we don't agree with that. It is exactly that kind of case. At what point did Pelkey say, I won't pay for the towing? There's a letter in the record of the New Hampshire Supreme Court, Your Honor. I believe it's at page 86 and 87 of the record in the New Hampshire Supreme Court, which is a letter from Mr. Shaughnessy, counsel for Mr. Pelkey, to my client. And this letter was written something in the range of three months after the towing took place and before the vehicle had been disposed of. And the letter asserts that Mr. Pelkey doesn't believe he should have to pay for any storage fees. He would pay the towing fees, but he doesn't believe he should have to pay for any of the storage fees. And that's really reflective of what this case is really all about. It's about a dispute over payment. And the reason why this case is so significant. Sotomayor, payment over towing, payment over storage? He offered in this letter to pay the towing fees only. There was never any tender of payment. There was an offer to pay, provided that my client would tow the vehicle back to his place of residence because the vehicle wasn't operative at the time. Sotomayor, if this was a consensual contract, he asked Justice Scalia's question. They contracted for the tow. What State laws would be preempted under the FAAA with respect to that private contract? Would there be any? The any breach of contract claim that might arise on behalf of the plaintiff would not be preempted. That's what the Court decided. Sotomayor, the consumer fraud laws apply to that contract between the parties? The consumer fraud law might apply. That's the basis of his claim here. It might apply as a matter of State law, but it would be preempted. So you're arguing that those laws would be preempted. It would be preempted to the extent that it's a the case involves a dispute over payment for the services. This is a dispute. This case is a dispute. Sotomayor, back to whether the services include storage, which is what the New Hampshire court said it doesn't. The New Hampshire Supreme Court said the movement of property or towing doesn't include services for storage. That's what the New Hampshire Supreme Court said, relying on the minority view that's come out of the Ninth Circuit in the Cherist decision. So why don't you answer that question? As I read the list of things that are preempted, they have to do with storage during transportation. Why should we read it more broadly than that? I think, Justice Sotomayor, I think you're referring to the argument that's been made by my friends with regard to the final phrase in the statute with respect to transportation. Exactly. And the short answer to that question is that the term transportation is a defined term in Title 49, and it's defined very broadly for good reason, because that term is used throughout Title 49. In fact, the term is used to define the scope of jurisdiction of the Department of Transportation. And the definition of transportation is quite broad. It includes storage is the point you're coming to, right? That's correct. The definition includes storage. You think it means storage at the end of the transportation? Suppose you're a company that moves goods, but we also store goods. You can, you know, rent space and we'll store your furniture for years. If that company picks up some goods, brings it to its warehouse, and leaves it in its warehouse for three years, that storage is covered by this statute, you think. See, I thought the storage was storage in the course of the transportation. Sometimes when you're, you know, changing the mode of transportation, going from trucks to ships or something, you have to store it temporarily during the course of the transportation. That's how I would read it. But you're saying even if you're a storage company, if you pick up goods and bring it to the place where you store it, that's covered by this statute? No, that's not what I'm saying, Your Honor. I'm saying that if you tow a motor vehicle and you bring the motor vehicle into your possession via towing, and as is the case here, you also store the vehicle, and you have to store the vehicle, and in particular in a case like this where the claimant was seeking to have the vehicle returned to his place of business, to his place of residence, those are the facts of this case. This wasn't necessarily the end of the transportation. The plaintiff here, the Respondent, was asking for further transportation services at the end of the day. So on the facts of this case, the transportation hadn't ended. But even if we do have a situation where there would have been no further transportation, the reading that my friends have advocated inserts the word ''incidental'' to transportation in the statute that doesn't appear in the statute. The definition of transportation doesn't include the word, doesn't say ''storage incidental to the movement of property.'' Roberts, let's say you park your tow trucks on somebody else's parking lot, and you don't pay the rent, so they sell your tow truck. Is your claim against your landlord preempted? I don't think so, Your Honor, because I don't think that that scenario would fall within what Congress intended by the term ''services'' there. That claim, that claim that you've described, Mr. Chief Justice, is a claim that would really be a breach of contract claim between the tow truck owners and his landlord. That would be a contract dispute. It wouldn't relate to the transportation services of the tow truck company in a way that is picked up by this preemption statute. It relates to it in a very tangential way, in a very remote way, I suppose, but not in a way that's close enough, not in a way that relates to the business of a tow truck company in the way that payment disputes over the services relate to the business of the tow truck company. There are any number of different types of disputes that motor carriers like tow truck companies could get involved in that wouldn't be preempted here. Motor carriers are involved in lots of different types of business activity that doesn't involve the delivery of their services. They could be involved in a real estate transaction, for example. They may be buying a new depot, and there may be claims that arise out of disputes in connection with that real estate transaction. Those claims aren't preempted by the statute, even though in a very remote sense, those disputes might be related to the business of the motor carrier. It's very remote, unlike a situation where the claim arises out of the actual delivery of the transportation services. Roberts. So if your tow truck is involved in an accident and a suit is filed for negligence, is that preempted? I don't think that's preempted, Your Honor. I — and the reason I say that is because there's a whole line of court of appeals decisions in the airline area that deal with negligence claims arising out of the negligent operation of the aircraft. And your scenario is the negligent operation of a tow truck as opposed to an aircraft. I'm just looking at the statutory language. It says, you know, related to service of a motor carrier with respect to the transportation of property, and, you know, your motor — your truck is involved in transporting property. That's the claim against you, that you don't — you don't read your good service because you're negligent. And it just seems to me to fit within the terms of the statute, if you adopt as broad a reading as you adopt. Well, literally, I think you're right, Your Honor, that the scenario you describe could fall within the literal language of the statute, but the court has said that we can't go — we can't necessarily go to the literal end of the earth in the reading of the statute. And we have to — we have to limit this in some fashion. And the limitation that the court has fashioned— Scalia, let me tell you how we— Scalia, it seems to me we've limited it. In the Columbus case, Columbus v. Ours Garage and Record Services, Inc., we said that the clause's limitation to motor carrier services with respect to the transportation of property massively limits the scope of preemption to include only laws, regulations, and other provisions that single out for special treatment motor carriers of property. And here you've told us that this case doesn't involve any law that singles them out for special treatment. To the contrary, it's the general consumer protection law. Well— So you want us to eat those words? They were wrong, or somehow you don't come within them? Respectfully, Justice Scalia, I think those words came from your dissent in that case. Ah. I forgot that. It's like you say they were wrong, you said. No, no. No, I don't say that they were wrong, Justice Scalia. What I would do, though, is I would point the Court to the language of the statute. And not only the specific statute involved here, the motor carrier statute, but there's a twin statute that applies to air carriers. And it also applies to hybrid air and motor carriers. And I apologize, I haven't set out the text of this statute in our appendix or anything, but it's section 41713 of Title 49. And it includes very similar general, broad, general preemptive language. And it does not, neither of those provisions in 41713 contains limiting language that would limit the scope of preemption in any way. The — and we know from the legislative intent with regard to the statute involved in this case directly that Congress intended that the scope of preemption for all of these different kinds of industries would be coextensive. That's what Congress was trying to achieve with this statute, was to give motor carriers the same breadth of protection through preemption that air carriers enjoy and that hybrid air and motor carriers enjoy. And so if there are no — if there are no limitations with regard to air carriers and hybrid air motor carriers of the type that are suggested by my friends for motor carriers, then that language at the end of 14-501 can't be interpreted in a strictly limiting fashion. Breyer, no, there's a lot of language in the majority pretty much along the line that Justice Scalia said. And I'm not sure it was in that point. I mean, Justice Ginsburg wrote the majority, and she said the reference to regulatory authority of a State, which is a different reference, I agree, should be read to preserve, not preempt, traditional prerogatives of the State. And Justice White said previously that you have to start with the idea that this is — historic police powers of the State are not going to be superseded by the Act unless it's a clear manifest purpose of Congress. So I guess the problem is with a lot of the other things, that you yourself are in an area that is a traditional matter of State regulation. It is, in fact, regulated in a way that applies to everybody. It is indirectly related to the transport itself and that it takes place on — about storage that took place after the event. So you have all that working against you. Now, the Columbus case does offer some hope for the other side, I would think. But what do you think? Well, Justice Breyer, let me just say, first of all, that consumer protection is — I'm not sure I would concede that consumer protection is an area of traditional State regulation. In fact, the New Hampshire Consumer Protection Law dates to 1970, and the Federal Government has largely occupied the field of motor carrier transportation since 1935 with the enactment of the Motor Vehicle Act in that year. So that's your problem, which is, what is it directed to? And that's the real issue in this case. Yes, it's preempted with respect to any towing activity. The issue is, is it preempted, as the New Hampshire court said, to storage and sale? That is what the New Hampshire Supreme Court said, Justice Sotomayor. I would submit that that's an artificial distinction that fails to take into account the broad definition of transportation in Federal law. The Court has not. Ginsburg's question is, is it preempted with respect to storage when they are doing the identical thing, that is, storing and then selling the vehicle? Well, if a person has brought their vehicle into a garage, Justice Ginsburg, there's been no transportation by a motor carrier. The difference is that in this case, this whole scenario started out with the transportation by a motor carrier, which also, once it had possession of the vehicle, stored it. And so in a garage scenario, I suppose if a tower towed the vehicle to a garage and then left it at a garage to be worked on, that garage owner wouldn't be in a position to say that I can assert a preemption defense because that garage owner has never engaged in the kind of transportation activity that triggers this preemption law. I hope that answers the question. May I reserve? Roberts. Yes. Thank you, counsel. Mr. Shaughnessy. Thank you, Mr. Chief Justice, and may it please the Court. Transferring title and disposing of Mr. Pelkey's car against his will and not compensating him for the loss of his personal property is not a service of a motor carrier with respect to transportation of property. The regulation of State-created property interests is a field of traditional State regulation, and the broad sweep advocated by Dan City Used Auto in this case would create a regulatory vacuum because there are no Federal laws that allow the sale of a motor vehicle. Now, let me address some of the things that my brother has argued that this case is about that we disagree about. My brother has argued that this case is about payment. This case is not about payment. Mr. Pelkey is not challenging that Dan City's used car had the ability to tow the vehicle. We are not challenging how it was towed. We are not challenging the price of the tow. None of that is being challenged, and those are all the services of a motor carrier. Let me also make a point of the fact that the motor carrier is not a service of a motor carrier. We are not challenging the price of the storage. There was a reference to a letter that I had sent to the Dan City people several months, but there are two letters. The first letter was actually quite close to within several weeks of the auction, where we said no, we are looking to pay for it. The other letter was, I think in June, was saying you need to account for these proceeds. You sold the vehicle at auction and there is equity in this property. You need to account for these proceeds. So we didn't challenge the storage, but that brings up the issue raised by Justice Sotomayor with respect to the storage, and I would disagree with the characterization of my brother with respect to what RSA 262 is. RSA 262 talks about removed vehicles. It actually provides the authority to law enforcement to remove a vehicle that might be in a public way, but it also gives the authority to a private landowner to have a car removed that's on their private property. It does not relate to the motor carrier services of a tow truck operator. Roberts. It seems to me that you can't ignore the fact that part of what tow trucks do is store things. I mean, it's a necessary and integral part of the motor service, the transportation of property, that they do. And regulation of the storage will affect the services that they provide. It's not just like storing anything else. Well, respectfully, Mr. Chief Justice, we would say the storage is a separate service altogether. And the act of transportation, and this is another place where I would disagree with the characterization by my brother with respect to the definition of transportation, I believe the definition of transportation specifically refers to a motor carrier, meaning a person providing motor vehicle transportation for compensation, but also relates to the movement of the passengers of the property and the services related to that movement. So the very definition that applies to this case and to the transportation services relate to the movement of the property. Here, the movement has stopped. And the storage that we are dealing with in this case is precisely the storage that is in RSA 262, which is the storage charges, not for the movement of the property. So I would clarify, Mr. Chief Justice, that it is our position that the transportation with respect to the transportation of property, which Justice Scalia has aptly pointed out, severely limits the scope of this preemption statute. The services of the motor carrier terminated once the hook was off the tow truck. That is what it's about.  Suppose, Mr. Shaughnessy, that the New Hampshire laws were more onerous than they are. Suppose they said to a towing company, once you've towed this car, you have to hold on to it forever. Or suppose they said to the towing company, you have to hire private investigators to go figure out who owns this car. Would any of those be preempted? Yes. I believe it's pointed out in the Roe decision. In order for it to be related to the motor carrier service, it has to either directly regulate that service or it has an indirect connection with the service that significantly affects the service. In your example, it would be a direct regulation. You are actually requiring a motor carrier to actually provide a service that the So that is a direct regulation or an example of directly regulating that would be preempted under this statute. But what we're dealing with here is the storage afterwards is not that motor carrier service. And I do believe the language at the end with respect to the line, that line that you just asked us to draw between direct and indirect, how do we articulate that line? Because now you're articulating a different line. You're saying this, what the hypothetical that Justice Kagan posited, is not storage related. It is something else related. It's towing related. What's the difference? Correct. The way I interpreted the hypothetical is the State is then saying in order as a precondition to or as part of the motor carrier service of transporting or towing that vehicle, you also must provide this other service over here, which is actually was one of the problems with the Roe case. And under the Maine State statute, under Maine State law, what they were requiring the motor carrier to do in Roe was actually to provide that verification service. And so that was a direct regulation, I believe, that this Court found under Roe. Scalia. You've just told us that anything that significantly affects the transportation service is covered. And I think what your brother's argument is, is that this significantly affects the service, whether he can collect for the storage after, you know, after the towing it by selling it, and by selling it on terms that are not so onerous as to impinge upon his ability to run the business. Well, it may impinge upon his ability or impinge upon how much he can collect. It may impinge upon those things, Your Honor, but it doesn't affect the service of the motor carrier with respect to the transportation of property. That's the movement of the property. Certainly getting aid is an important part of any service that anybody provides. But that's getting too attenuated. That's getting too far out. That's the important part. Roberts. Roberts. I mean, this is a provision, of course, of the Federal Aviation Administration Act. And whatever rule we adopt is going to apply to air transportation as well. And is your position, for example, that things related to a hangar at an airport, that those are not covered by this at all? It seems to me that there, the connection between the transportation and the storage, the storage of the airplane, you can see a little bit more clearly how that would affect what the airplane, you know, can do. A lien. You can't take the airplane out of the hangar because you didn't pay, you know, the rent or whatever. There is an effect there. And I do believe that this Court started drawing that line actually in the Travelers' case. And when the Travelers' case looked at this related to, that's what's causing the problem. Related to and what does related to mean? And as has been pointed out, if you actually use related to and to its extreme, everything is related to everything else. And that's been said several times in the case law. But related to in Travelers, I believe in that case the Court looked at there was a tension to that type of broad sweep of related to and the presumption against preemption, which says we're not going to preempt, but related to seems we're preempting everything, so there's a tension. So in Travelers, we went to, well, we have to take a look at what the manifest intent of Congress was for the regulatory scheme. We have to look at the intent of Congress. And certainly the best place to look for that intent is first in the words that are used. But once we're looking at the intent, we have to say, does the actual thing that's being regulated by the State, and they're putting in their own policies by direct regulation, by a positive enactment, does it affect or significantly affect the deregulatory purposes? Breyer, I believe that's the line that was adopted in Roe. Breyer, now, don't lose that. I'll ask you this question, which favors you in a sense, but I want the answer really from the Solicitor General, who may know, but I'm going to ask it to you too, because you probably both thought about it and he may have some, they may have some experience on it. If you start talking about significant effect, without those last words, deregulatory purpose, I suddenly worry about the following. Every city in the United States depends upon towing to regulate parking within the city. We couldn't function without it, although none of us like it. We know that it's necessary. And certainly a law that provides for towing does directly regulate the service of the tow truck. It says do it. Then it tells you when not to do it. So what's the – what happens? Is every traffic law in the United States involving towing suddenly preempted? I can't believe that. How does this work? So there's much more insignificance in this case in the words we write, perhaps, than in the particular case. Now, do you want to, in light of what my concern is, add anything to what you say? And you may not, the Solicitor General might, but I'd like to hear anything you have to say about that. Well, I believe with respect to RSA 262, which is the statute that is in this case, it doesn't require a tow truck company to do anything. No, you can just rest on that. But I'm going to have to – or somebody is going to have to write an opinion. And we could just say that, but I don't see I can – my own problem is not being able to have an intelligent answer to that without having some answer to the bigger picture. And the bigger picture seems to me horrendously important. And I don't know what that answer is. You seem to be getting there with the words deregulatory purpose. And I was thinking how we might try to work with those, but go ahead. Well, I think it is an easier case in this case, under the FAAA. Oh, I think it's much harder than this case, because the relationship is, in the more general case, is more direct to the tow truck. It says go tow. And that's why I need some kind of bigger picture. I'm getting lost in the go tow command, if you will. We have a statute which says if you park your car here for more than 3 hours, you will be towed, okay? And as part of that statute, though we don't see it, there is an arrangement for the service of the city with the tow truck company, which says when the parking person calls you and says the meter says red, yellow, purple, green, you are to go there and tow, okay? Doesn't that sound as if it's regulating the service of tow trucks? And I suspect across the country there is some variation on that theme, but there are thousands of them. And since the words, I would be repeating it. The words of this case may affect that situation. I want to know what you know, which may not be very much, I don't claim you, about that broader situation. Well, thank you for the out, Justice Breyer. But, again, I the reason I'm getting lost is, and I understand the example having to do with the City of Cambridge having no parking, and if you are there for 3 hours, that allows, there is the statutes that allow the tow truck operator, the motor carrier, to go and collect that under a nonconsensual tow. And a nonconsensual tow is a special animal, unfortunately, because there are no market forces in play there. But I don't believe that that's affecting the motor carrier service. There is nothing that forces that tow truck carrier to go out and actually undertake that tow. And if they do undertake the tow or do the business or whatnot, then certainly they would be under whatever obligations the State has. And that's one of the problems I think we have. Sotomayore, I think that Justice Breyer is, I may be speaking for him, he's thinking that that State contract or that State regulation that permits towing companies to do this is preempted in some way. That would be his argument, because he thinks that's the opposite. He's worried that it will be preempted. He didn't mention Cambridge, did he? I don't think so. People are, you know, you're both from Massachusetts. They're very attractive places, except in the winter. But a motor carrier vehicle, a service, transportation includes related to the movement of passengers or property, related to the movement of passengers or property. So we have those words related to again. I don't know. Well, you've given me a couple of ideas, but maybe they'll turn out not to be relevant, but which I hope. I think maybe we have to make it up, what the limitation. I mean, you're quite right. Everything is related to everything else. And we've had trouble with the same, the very same words with ERISA, and started off trying to give it its apparent meaning, related to. And we finally concluded you can't do that. So what do you want us to make up? What kind of a limitation do you want us to make up? Justice Scalia, I don't think you have to make up too much in this particular case. It gets easier to draw the line because of the with respect to transportation of property. So with respect to the FAAA and motor carriers, we're drawing the line as to only the services of the movement of the property, and that is limiting. And I would agree with your dissent. Related to. Related to the movement of the property. That's the problem. It's the related to words. Correct. And then we go back to the instructions in Roe, which provided the framework that says when you're interpreting related to, you go, one, is it directly regulating or directly affecting service, or if it's an indirect effect, which obviously can be, it has to have a significant impact on the services. And then there's the ultimate out of the Morales that says if it's, it could certainly connect, but if it's too far attenuated to the purposes of Congress, it's just not going to be done. I know that doesn't help with the lawn drawing in connection of the gray area that we're dealing with in this case, but I do believe in this particular case it is easier because we have those words of limitation with respect to the transportation of property, our words of limitation, and they are not present in the ADA, and they were not present with the ERISA cases, which deals with a broad regulatory scheme with long history and other things that apply. We don't have that in this case. I believe the New Hampshire Supreme Court got it right when they were focusing on actually what is a service of a motor carrier, and I believe we do have words of limitation in this particular case. So what the Supreme Court of New Hampshire said is the manner in which a company in possession of a towed vehicle may, not must, may dispose of the vehicle to collect on a debt created by the operation of State law is far removed from Congress's aim of promoting free markets and equalizing the competitive playing field between motor carriers and air carriers, and help assure transportation rate services reflect maximum reliance on forces. I also believe that the Petitioner has basically given up the case and conceded the case in several places in their brief and in here in an oral argument today. If you look at page 34 of the Petitioner's brief, it says that most, that the most that Dan City really can say is that the services within the meaning of section 14501C1 includes activities that are incidental and distinct from the actual transportation services. So the Petitioner's brief is calling this storage afterwards, after the transportation has stopped, and they call it incidental and distinct. In the reply brief at page 21, they say, Moreover, criminal laws prohibiting theft are not the kind of burdensome State economic regulation Congress sought to prevent with the FAAA, nor are abandoned vehicle laws, such as New Hampshire Chapter 262 and its regulations, which do not hamper the operations of tow truckers. Instead, they establish procedures for the efficient handling and disposition of abandoned vehicles. So they are conceding that RSA 262 in this case, the statute, does not have a significant impact, so this is not a clear case. I see I have more time, but I think I've made all my points, if there are no more questions. Roberts Thank you, counsel. Mr. Yalen, welcome. Yalen Thank you, Mr. Chief Justice, and may it please the Court. Congress deregulated the trucking industry to eliminate undue interference with market forces and consumer choice. But market forces and consumer choice cannot operate on the sale of non-consensually towed cars. And there is little reason to think that Congress intended to preempt State laws that regulate that conduct. This Court, in this case, as in many preemption cases involving the phrase related to, must engage in a process of sensible line drawing. Everything is related to everything else in the literal sense, and the Court in Travelers suggested that the Court should not — courts should not use uncritical literalism in determining the scope of a preemption provision. I think that this Court does have some work to do in this case, but a lot of the groundwork has already been laid in the Roe case. In Roe, this Court held that a State law is related to a motor carrier service if the State law either directly regulates the service or if it has an indirect connection with the service and a significant — a forbidden significant effect on Congress's deregulatory and preemptive objectives. Roberts. Roberts. Well, I think it's — I asked your friend on the other side the question. Storage is part of what tow trucks do, maybe in a way that, you know, cross-country trucks don't. And it seems to me if you have a local jurisdiction who figures out, well, this is a great way to make a lot of money or, you know, to give — or the other way, you know, you can charge a lot because we want to keep subsidized tow trucks. I mean, why isn't that fairly directly related to the service they provide? It's certainly a foreseeable service that could be provided. The question is whether it has the — a sufficient locus to the transportation itself. I think there are indications in the statute itself and the statutory purposes which suggest that the Court should view service as a separate type of service, independent and distinct from transportation, at least in the towing context where the motor transportation has ceased. The reason for that, Your Honor, is that— Scalia. I don't understand what you just said. Say it again. Yes, sir. I think that there are reasons in the statutory text itself and in the — in the statutory objectives for viewing service as independent — excuse me, storage. Service where? I misspoke, Justice Scalia. Storage. Storage. As independent of transportation. And the reasons for that are as follows. First, let me start with the statutory text. The statute defines transportation as services related to the transportation of property, and for — and storage has been in the Interstate Commerce Act for over 100 years, the term storage. And for over 100 years, this Court has construed disputes concerning storage and considered whether or not Federal law governed or State law governed. When the storage was before delivery of a package, for example, the storage was considered to be storage in transit, and it was part of the transportation itself. But if the storage occurred after delivery, that was a separate service, not connected with the transportation. Mr. Yellen, I gave Mr. Shaughnessy a couple of hypotheticals about very onerous regulations involving storage after the towing that might very conceivably have an effect on the towerer, drive up the towerer's prices, conceivably even drive the towerer out of the market. So how do we draw the line as between this and those kinds of things? So I have two points that I'd like to make with respect to that, Your Honor. The first is that I think the hypotheticals you gave are much more difficult cases and could very well cross the line if a State tried to indirectly influence towers. For example, let's assume, if I may elaborate on your hypothetical, that a State really disliked the practice of nonconsensual towing, really wanted to try and rein it in, and so imposed certain conditions on towers that would discourage them from providing that type of service. I think that would be an indirect type of regulation, but it would, if, as a matter of fact, it really would impair the ability or the interest of towers to provide this service. Scalia, how do we discover that? I mean, would we look into the city council hearings or what? I think, in part, Your Honor, these are No, I want to be able to look at the law and say the law is preemptive or the law isn't preemptive. Don't tell me, you know, if the purpose of the law was this or that. That's not something I'm able to do. Your Honor, I think some of these preemption questions necessarily are factual in part, in nature. The Court, to consider whether or not a service of a motor carrier is affected by an indirect statute. That's factual, but whether the intent of the city council was this or that is not factual. Oh, no. That's right, Your Honor. And I didn't mean to suggest that that would be part of the inquiry. It's, it's, no, no, Your Honor. The question is whether it would have that effect, that factual effect. And if I may, I think it's critical in this case to point out that Petitioner has conceded at page 21 of its reply brief that laws like Chapter 262 do not hamper towing industry practices, and Respondent's amicus, Towing and Recovery Association, explains that laws like this provide a critical backbone for nonconsensual  In the absence of these cases, I think that's what I'm trying to get at. Well, but, I mean, that's maybe, maybe these, but you can easily imagine that these would be abuse and would have an adverse impact on the towing company and, therefore, on the transportation of property. And if there were such abusive laws, Your Honor, and if they do impair the transportation of property and the services that a tower was willing to provide, I think that the Court would likely consider those cases and consider those cases. Well, now we only, now we not only have to decide whether this type of law is related to it, but once we say some of those laws might be and some won't be, depending upon the impact in a particular case. Your Honor, I think every law has to be considered in its application. And I think that, for example, in Morales, the Court just didn't consider a guideline. Every law doesn't have to be considered in its application. You say you can't speak out on the sidewalk, it doesn't matter what they apply. You can consider that law absolutely. Fair enough, Your Honor. My comment was too broad. What I would say is some laws will be obvious. Those that directly regulate towing industries, for example, a State law that flatly prohibits nonconsensual towing would be the type of direct regulation which is proscribed by this preemption clause. When you're talking about indirect regulation, however, that perhaps is where I think one needs to consider it on an as-applied basis, because indirect regulation by definition is not going to have an obvious direct limit on the extent to which it impairs the provision of towing services. And the question a court will have to consider is whether the indirect regulation is sufficiently onerous that it does impair the provision of towing services. Breyer, it seems to me we have two choices in Morales, since I can mock my own opinions. I wrote at the end, it's not when it's too tenuous, remote, or peripheral. Well, that's singularly unhelpful. It seems to me that there are two directions. Scalia I thought so at the time. Breyer You were right. There are two directions you could go. But first I would like to know, it seems my guess is it is universally thought by cities that this Act does not preempt their normal parking regulations. Am I right about that? Verrilli, You are right about that, Your Honor. Breyer Okay. Then if we either have to take this tenuous, et cetera, this is too much, this isn't too much, da, da, da, or you have given another thought being thrown out, and that is you relate it to the basic purposes of the Deregulation Act, and you say that where the city is regulating something that never was, could not be, and is not part of a regulated or deregulated market, i.e., has nothing to do with the subject matter, then it is not preempted. Now, do you want us to take that approach? Should we punt and just use the words like tenuous, or and if we take your, the implicit suggestion, what's the right way to do it? Verrilli, Your Honor, I think the two alternatives you sketched are not mutually exclusive. In fact, I think they support each other. I believe that when a State law does not have a significant effect on Congress's deregulatory and preemptive objectives, it is by definition going to be too tenuously connected to the motor carrier services. I would propose, Your Honor, that in this context where the Department of Transportation would have no regulatory authority and where there is no private market that could fill the vacuum that would be created by the removal of State laws creating the structure for the private choices that are undertaken here, this would be a prime example of that. Scalia, So it would depend upon how severe the consumer protection law is. Is that right? If it's a consumer protection law that really whacks the tow truck operator, that would be different from a moderate, benign consumer protection law. We have to examine each consumer protection law on its own. Is that it? Verrilli, I think the answer has to be yes, Justice Scalia. In Morales, for example, the Court considered the application of a consumer protection law where the States were trying to use specific guidelines. Roberts, Well, why doesn't this one really whack them, though? It's treble damages and all that. You can answer my question, yes. Verrilli, Thank you, Mr. Chief Justice. Your Honor, the Consumer Protection Act claims that are asserted here are premised on Chapter 262, which structures the background organization of the nonconsensual towing services altogether. There will be no treble damages if the substantive provisions were satisfied. If they're not, that would be a different question. And, Your Honor, there's been no evidence suggested here that, in fact, treble damages for a violation of the background laws which structure the standards that tow truck companies are supposed to undertake would have that harm. Roberts, Thank you, counsel. Mr. Bouffard, you have 3 minutes remaining. Thank you. Let me take a couple of moments to try to address some of the questions that seem to be troubling some of the Justices. Justice Breyer, the simple answer to why local traffic safety laws wouldn't be preempted is that there's an exemption for the safety regulatory authority of States in the statute. And, Justice Kagan, the reason why this case goes over the line and is preempted is because what the plaintiff's damages claims in this case seek to do is they seek to enforce duties that go well beyond what even the New Hampshire abandoned vehicle law requires. They seek to impose duties of reasonable care to seek out the owner of the vehicle. The negligence claim seeks to impose a duty to act, a duty of reasonable care in disposing of the vehicle and a duty of reasonable care to return the vehicle to Mr. Pelkey. And those duties, and whether there's been a breach of those duties, will be determined by a jury. And so when tow truckers are faced in the future with having to live up to those sets of duties, they will never know whether or not in any given situation their conduct will be second-guessed as having been not reasonable by a jury and they will be subjected to damages claims by plaintiffs. Under the abandoned vehicle law, the rule is very simple in New Hampshire and under and in many other jurisdictions. Pay or your vehicle can be sold. It's a very simple rule. And it also tells how the vehicle will be sold and your client is invoking that statute in order to be able to sell the car, but wants to have enforced only the parts that are favorable to the tow operation. The regime in New Hampshire is, yes, you can sell the vehicle, but this is how you do it, and it seems to me that that's not how it was done here. Well, Justice Ginsburg, actually, the tower here wasn't invoking the law. The tower was simply following what the law says in terms of the process. This is a mandatory process. When a person comes into possession of another's vehicle in New Hampshire and there's no claim made for the vehicle, the law requires that the tow trucker report that fact to the Department of Motor Vehicles. And the Department of Motor Vehicles then looks at the information that's provided and then instructs the towerer about the process of whether or not the vehicle can be sold without notice, or if notice is required, what notice is required. But it's a process that allows you in certain circumstances to sell the car and to take the money. And what Justice Ginsburg is suggesting is, you know, you have to take the bitter with the sweet. Please. Well, I think that the New Hampshire law is the New Hampshire law. And what we have here is a tow trucker that was just making a good faith attempt to comply with the law. And if tow truckers that are making good faith attempts to comply with the law are faced with Consumer Protection Act claims and negligence claims and the kinds of remedies that come with Consumer Protection Act claims, that will have a significant impact on the business of these motor carriers. Thank you, counsel. The case is submitted.